William J. Edelman (SBN 285177)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Tel: (771) 474-1121
wedelman@milberg.com

Michael A. Acciavatti (*pro hac vice forthcoming*)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel: (212) 594-5300
macciavatti@milberg.com

*Attorneys for Plaintiffs and Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MONEAL PATEL and LAUREN MORGAN individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC, PBC<br><br>Defendant. | Case No.   3:26-cv-7837<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**<br>**2. VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**<br>**3. VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**<br>**4. BREACH OF CONTRACT**<br>**5. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**6. QUASI-CONTRACT AND RESTITUTION BASED ON UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Moneal Patel and Lauren Morgan ("Plaintiffs") bring this action individually and on behalf of all others similarly situated against Defendant Anthropic, PBC ("Anthropic" or "Defendant"). The allegations contained herein are based on Plaintiffs' personal knowledge as to themselves and their own actions, on counsel's investigation, and on information and belief as to all other matters.

## **NATURE OF THE ACTION**

1. This consumer class action arises from Anthropic's retention of subscription fees despite backend changes and production defects that materially reduced subscribers' practical access to Claude, its flagship artificial-intelligence platform. As Anthropic later acknowledged, these failures caused paid usage limits to deplete more quickly and diminished the value of the services subscribers purchased.

2. Anthropic develops and operates Claude, an artificial-intelligence platform available through free and paid subscription tiers. Individual subscribers pay approximately $20 per month for Claude Pro, $100 per month for Max 5x, or $200 per month for Max 20x. Each paid plan provides subscribers with access to multiple Claude products and services within the selected tier.

3. The best-known of those products is regular Claude, the web, desktop, and mobile chat interface through which subscribers can enter prompts, upload documents, request research or analysis, draft and revise text, and direct Claude to perform other general-purpose tasks. Regular Claude is comparable to an ordinary paid generative-AI chat service.

4. Claude Pro and Max subscriptions also include access to Claude Code, a separate and specialized "agentic" coding tool. Claude Code can review software codebases, edit project files, execute commands, identify and debug problems, and integrate with development tools. A Pro or Max subscriber may use regular Claude, Claude Code, or both.

5. The challenged conduct affected two overlapping groups of paid subscribers. First, in March 2026, Anthropic announced a peak-hour change that caused Pro and Max subscribers to exhaust their five-hour session limits more quickly than before. That conduct affected subscribers who used regular Claude, Claude Code, or both. Second, Anthropic later admitted that separate backend changes implemented during March and April 2026 specifically degraded Claude Code and related products, resulting in reduced intelligence, lost context, repeated work, cache misses, and faster-than-expected usage depletion.

6. For paid subscribers, activity across regular Claude, Claude Code, and other Claude product interfaces counted against shared plan limits. Anthropic exclusively controlled the nonpublic systems used to calculate, allocate, and deplete that shared usage. Although subscribers could

2

CLASS ACTION COMPLAINT

observe their remaining usage percentage decline, they could not determine whether the reduction resulted from legitimate requests, productive work, a peak-hour capacity policy, hidden processing, or defects in Anthropic's backend systems.

7. This action concerns whether Anthropic may materially impair the practical service delivered during a paid subscription period, fail to adequately disclose or account for that impairment, and retain the full subscription price without providing compensation proportionate to the resulting loss.

8. Plaintiffs and Class Members paid more for their subscriptions than the diminished services they received were worth. Regular Claude users were deprived of paid access when Anthropic accelerated the depletion of session limits during peak hours. Claude Code users were subjected to the same capacity reduction and, additionally, to product-specific defects that wasted paid usage and disrupted coding workflows.

9. Plaintiffs therefore bring this action on behalf of affected Claude subscribers to recover the economic value Anthropic retained while providing materially diminished paid access, and to obtain appropriate declaratory and injunctive relief.

## JURISDICTION AND VENUE

**A. Jurisdiction**

10. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the proposed Class includes more than 100 members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Class Member is a citizen of a state different from Defendant.

11. This Court has personal jurisdiction over Anthropic because Anthropic maintains its headquarters and principal place of business in this District, conducts substantial business in this District, and directed the conduct alleged herein from this District.

12. Upon information and belief, Anthropic developed, marketed, priced, operated, and administered the Claude subscription services challenged in this action from its headquarters and other facilities located within this District.

13. Anthropic has purposefully availed itself of the privilege of conducting business within this

3

CLASS ACTION COMPLAINT

District and has derived substantial revenue from the sale of Claude subscriptions to consumers in this District and throughout the United States.

14. Anthropic's Consumer Terms also provide that disputes relating to its services are subject to the jurisdiction of the state and federal courts located in San Francisco, California.

**B. Venue**

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Anthropic resides in this District.

16. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

17. Anthropic conducts substantial and continuous business in this District and regularly engages in interstate commerce from this District.

18. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because Anthropic is subject to personal jurisdiction in this District.

## DIVISIONAL ASSIGNMENT

19. Assignment to the San Francisco Division is proper under Civil Local Rule 3-2 because Anthropic's principal place of business is in San Francisco County and the challenged product, marketing, capacity, and refund decisions emanated from that county.

## PARTIES

20. Plaintiff Moneal Patel ("Plaintiff Patel") is a natural person and citizen of California, residing in San Diego. In February 2026, Plaintiff Patel purchased a Claude Pro subscription directly from Anthropic for $20 per month. Plaintiff Patel used both regular Claude and Claude Code during all or part of the period from March 4 through May 6, 2026.

21. Plaintiff Lauren Morgan ("Plaintiff Morgan") is a natural person and citizen of California, residing in Huntington Beach. On April 10, 2026, Plaintiff renewed a Claude Pro subscription directly from Anthropic for $20 per month. Plaintiff had previously subscribed to Claude Pro in 2024, later canceled her subscription, and renewed it on April 10, 2026. Plaintiff used regular Claude, but not Claude Code, during part of the period from March 4 through May 6, 2026.

22. Defendant Anthropic, PBC is a Delaware public benefit corporation with its principal place

4

of business at 500 Howard Street, San Francisco, California 94105. Anthropic develops, owns, markets, sells, and operates Claude, its artificial-intelligence platform.

## FACTUAL ALLEGATIONS

### A.  Anthropic Markets Its Paid Claude Plans as Distinct Tiers of Practical Access

23. Anthropic launched Claude in 2023 and offers access through free, individual, team, enterprise, and usage-based plans. The individual paid plans at issue here are Claude Pro, Max 5x, and Max 20x.

24. Claude Pro costs approximately $20 per month. Anthropic markets Pro as providing greater usage than the free plan, together with priority access during periods of high demand.[1]

25. Claude Max costs approximately $100 or $200 per month, depending on the selected tier. Anthropic advertises Max as providing greater usage, higher output limits, and priority access, and markets Max 5x and Max 20x as offering five or twenty times the per-session usage available under Pro. Anthropic further promotes Max as allowing subscribers to avoid interruptions and remain engaged in productive workflows.[2]

---

[1] What is the Pro plan?, Claude Help Center (June 10, 2026), https://support.claude.com/en/articles/8325606-what-is-the-pro-plan  (last accessed July 24, 2026).
[2] What is the Max plan?, Claude Help Center, (July 14, 2026) https://support.claude.com/en/articles/11049741-what-is-the-max-plan (last accessed July 24, 2026); Overview, Claude Code Docs, https://docs.anthropic.com/en/docs/claude-code/overview; Use Claude Code with Your Pro or Max Plan, Claude Help Center, https://support.claude.com/en/articles/11145838-use-claude-code-with-your-pro-or-max-plan. (last accessed July 24, 2026).

CLASS ACTION COMPLAINT

*Anthropic's public-facing individual-plan comparison.*

26. Anthropic's pricing interface prominently presents these representations as part of the subscription decision. It informs prospective subscribers that Max includes all Pro features, along with increased usage, higher limits, early access, and priority access, and invites them to select either five or twenty times the usage available under Pro. The only general qualification appearing beneath the plan descriptions states that usage limits apply and that Anthropic may change its prices and plans at its discretion.

27. Anthropic's Consumer Terms provide that the content, features, and services included with a subscription are identified during the order process. The purchase flow and accompanying plan descriptions therefore define the features and benefits subscribers are promised under their paid plans.[3]

---

[3] Anthropic, *Consumer Terms of Service* § 6.1 (effective Oct. 8, 2025), https://www.anthropic.com/legal/consumer-terms ("The content, features, and other services provided as part of your Subscription, and the duration of your Subscription, will be described in the order process.") (last accessed July 24, 2026).

CLASS ACTION COMPLAINT

**B.  Paid Subscribers May Use Regular Claude, Claude Code, or Both**

28. Regular Claude is the general-purpose chat experience available through Claude's website and consumer applications. Subscribers use regular Claude by entering prompts or uploading materials and asking it to answer questions, conduct research, analyze information, draft or revise content, summarize documents, and perform other conversational tasks.

29. Claude Code is a separate product surface designed for agentic coding work. Anthropic describes Claude Code as a tool capable of reading a user's codebase, editing files, running commands, and integrating with development tools.[4] Subscribers may access Claude Code through a terminal, desktop application, or browser-based interface, and access to Claude Code is included with paid Pro and Max plans.[5]

30. This action concerns two overlapping forms of diminished subscription value. Subscribers who used regular Claude, Claude Code, or both were subject to Anthropic's shared usage-allocation system and the challenged conduct alleged herein, including the peak-hour reduction. The subset of subscribers who used Claude Code was also affected by the separate coding-specific defects that occurred during March and April 2026, as described below.

**C.  Anthropic Applies Shared and Opaque Usage Limits Across Regular Claude and Claude Code**

31. Claude usage is not measured by a fixed number of prompts. Anthropic instead describes a subscriber's usage limit as a "conversation budget" that determines how many messages the subscriber may send or how long the subscriber may use Claude Code before the limit resets. The rate at which usage is consumed varies based on the selected model, the length of messages and attachments, conversation history, feature use, and other factors controlled by Anthropic.[6]

32. For paid subscribers, activity across regular Claude, Claude Code, and Claude Desktop

---

[4] Anthropic, *How Claude Code Works*, Claude Code Docs, https://code.claude.com/docs/en/how-claude-code-works (last accessed July 24, 2026).

[5] Anthropic, *Use Claude Code with Your Pro or Max Plan*, Claude Help Center (June 11, 2026), https://support.claude.com/en/articles/11145838-use-claude-code-with-your-pro-or-max-plan (last accessed July 24, 2026)

[6] Anthropic, *Usage Limit Best Practices*, Claude Help Center, https://support.claude.com/en/articles/9797557-usage-limit-best-practices (last accessed July 24, 2026)

CLASS ACTION COMPLAINT

counted against the same account-level usage limits. Subscribers who used more than one Claude product did not receive a separate usage allowance for each. Usage consumed through one product therefore reduced the capacity available through the others.[7]

33. Anthropic applies both five-hour session limits and weekly usage limits. Subscribers are shown only the percentage of usage remaining and the time until the applicable limit resets. The usage dashboard does not disclose the underlying token-level or event-level data needed to determine how much included usage was consumed by visible prompts, hidden reasoning, system instructions, context reprocessing, cache misses, tool calls, or other internal operations.

34. Anthropic exclusively controls the model defaults, system prompts, caching rules, context-management procedures, routing decisions, and capacity-allocation policies that determine how quickly a subscriber's included usage is depleted and the utility of the resulting output. Subscribers cannot inspect those systems before purchasing a subscription or independently verify their operation while using Claude.

35. As a result, a subscriber who observes the usage meter decline cannot determine whether the reduction reflects productive work, a change in Anthropic's policies, or a defect that caused Claude to repeat or reprocess prior work. Anthropic alone possesses the records necessary to identify the cause of the depletion, the affected accounts, and the amount of usage consumed.

**D.  Anthropic Reduced Pro and Max Subscribers' Peak-Hour Session Capacity**

36. On March 26, 2026, Anthropic engineer Thariq Shihipar publicly announced that Anthropic was modifying the five-hour session limits applicable to Free, Pro, and Max subscribers during weekday peak hours. Under the change, subscribers would consume their session limits more quickly than before, even though their nominal weekly limits would remain unchanged.[8]

---

[7] Anthropic, *How Do Usage and Length Limits Work?*, Claude Help Center, https://support.claude.com/en/articles/11647753-how-do-usage-and-length-limits-work ("Think of this as your 'conversation budget' that determines how many messages you can send to Claude, or how long you can work with Claude Code, before needing to wait for your limit to reset.") (last accessed July 24, 2026).

[8] Thariq Shihipar (@trq212), X post (Mar. 26, 2026), https://x.com/trq212/status/2037254607001559305.

CLASS ACTION COMPLAINT



*March 26, 2026 public statement concerning peak-hour session limits.*

37. Anthropic further acknowledged that approximately seven percent of users—particularly Pro subscribers—would reach session limits that they would not have encountered before the change. Anthropic advised users to shift token-intensive work to off-peak hours to extend the practical duration of their paid sessions.

38. Although Anthropic announced the policy through X.com, it did not provide paying subscribers with individualized notice explaining how the change would affect their accounts or diminish the value of subscriptions covering the affected period.

39. Anthropic's March 26 announcement applied to Free, Pro, and Max "subscribers." Because paid-plan usage was shared across regular Claude and Claude Code, the peak-hour reduction diminished the practical capacity available to paid subscribers regardless of which Claude product surface they used.

40. The change therefore restricted when and how paid subscribers could use their plans. A nominal weekly allowance does not provide the same practical access where Anthropic causes that

allowance to deplete more rapidly during the hours when subscribers are most likely to need the service.

41. Anthropic continued charging the same subscription prices throughout the affected period. As of the filing of this Complaint, Anthropic has not provided an automatic pro rata credit or refund to subscribers subjected to the peak-hour reduction.

**E. March–April 2026 Defects Specifically Degraded Claude Code**

42. On April 23, 2026, Anthropic published an engineering "postmortem" identifying three separate changes that had degraded Claude Code, Claude Cowork, and the Claude Agent SDK during the preceding weeks.[9]

43. First, on March 4, Anthropic changed Claude Code's default reasoning effort from high to medium. Although Anthropic provided some users with an in-product notice of the change, it did not disclose that the lower setting reduced Claude's intelligence, the extent of the resulting degradation, or the effect on the value of paid access. Anthropic later acknowledged that the change reflected the wrong tradeoff and restored the high-reasoning default on April 7.[10]

44. Second, on March 26, Anthropic deployed a caching and context-management change intended to reduce the cost and latency associated with resuming inactive sessions. A bug caused Claude to discard its prior reasoning on every subsequent turn after a session crossed the idle threshold, rather than doing so only once. Anthropic explained that the effects compounded over time because Claude continued working without the reasoning history underlying its prior decisions, resulting in forgetfulness, repetition, and unusual tool choices. The defect also caused repeated cache misses, which Anthropic identified as the likely cause of reports that usage limits were depleting faster than expected. Anthropic stated that it corrected the bug on April 10.

45. Third, on April 16, Anthropic introduced a system-prompt instruction intended to reduce the length and verbosity of Claude's responses. Anthropic later determined that the instruction impaired coding quality and reverted the change on April 20.

---

[9] Anthropic, *An Update on Recent Claude Code Quality Reports*, (Apr. 23, 2026), https://www.anthropic.com/engineering/april-23-postmortem (last accessed July 24, 2026)

[10] Id. at § "A Change to Claude Code's Default Reasoning Effort"

10

CLASS ACTION COMPLAINT

46. These changes impaired the core functions for which Claude Code subscribers paid. The peak-hour reduction shortened the practical duration of paid sessions, while the caching and context-management defect caused included usage to deplete faster than expected.

47. The caching and context-management defect also caused Claude Code to lose track of prior work, repeat tasks, and make unusual tool choices.

48. The reasoning-default and system-prompt changes separately reduced Claude Code's intelligence and coding quality. Taken together, these events demonstrate that Anthropic's backend decisions materially diminished both the quality of Claude Code and the efficient use of subscribers' paid capacity.

**F.  Anthropic's Purported Remedial Measures Did Not Compensate Subscribers for the Lost Paid Period**

49. Anthropic concluded its April 23 postmortem by acknowledging that the degraded service was "not the experience users should expect from Claude Code" and announcing a reset of usage limits for all subscribers. That blanket operational measure did not provide an individualized remedy to affected subscribers.

50. Anthropic also failed to provide subscribers with an account-level accounting of the usage consumed because Claude repeatedly discarded prior reasoning, reprocessed information, or experienced cache misses. Subscribers therefore had no way to determine whether the reset restored the usage they had lost.

51. More importantly, Anthropic did not refund or credit subscribers for the portion of their subscription fees attributable to the weeks of degraded service they had already received. Instead, Anthropic retained the full subscription revenue collected during those periods.

52. On May 6, 2026, Anthropic announced that increased computing capacity allowed it to double Claude Code's five-hour usage limits for paid subscribers and eliminate the peak-hour reduction previously applied to Claude Code usage by Pro and Max subscribers.[11]

53. That announcement confirms that Anthropic's backend capacity decisions materially

---

[11] Anthropic, *Higher Usage Limits for Claude and a Compute Deal with SpaceX*, Anthropic (May 6, 2026), https://www.anthropic.com/news/higher-limits-spacex (last accessed July 24, 2026)

CLASS ACTION COMPLAINT

affected the amount and timing of access delivered to subscribers.

54. The May 6 increase operated only prospectively. It did not compensate subscribers for the reduced peak-hour access they experienced from March 26 through May 6 or for the service-quality and usage-depletion defects that affected Claude Code during March and April.

**G. Plaintiffs' Experiences**

**<u>Plaintiff Moneal Patel</u>**

55. Plaintiff Moneal Patel purchased the subscription directly from Anthropic, subscribed to the Pro plan in February 2026, and paid $20 per month. Before subscribing, Plaintiff Patel reviewed Anthropic's plan description, which represented that the Pro plan would provide at least five times the usage per session available through Anthropic's free service, priority access during high-traffic periods, and access to Claude Code. Plaintiff Patel understood that the paid plan would provide materially greater and more reliable usage during the subscription period.

56. During the Class Period, Plaintiff Patel used both regular Claude and Claude Code for professional and personal purposes.

57. When using regular Claude, Plaintiff Patel accessed it through Anthropic's website, submitted prompts and relied on the shared usage included with the paid plan.

58. Before the challenged changes, Plaintiff Patel's regular-Claude sessions were generally consistent. Relatively simple tasks that did not require substantial usage ordinarily did not unexpectedly exhaust his five-hour session limit.

59. Plaintiff Patel used Claude Code between March 4 and May 6, 2026, through the Claude desktop application. Plaintiff Patel used Claude Code to access codebases, edit files, run commands, and assist with software projects.

60. In February 2026, before the challenged changes, Plaintiff Patel's Claude Code sessions were generally consistent, and ordinary tasks did not unexpectedly exhaust his five-hour session limit.

61. During the affected period, Plaintiff Patel experienced materially faster limit depletion, unexpectedly early exhaustion of his five-hour session limit, lower-quality work, and interruptions to his Claude and Claude Code sessions. Tasks that previously consumed relatively little usage

12

CLASS ACTION COMPLAINT

began exhausting his session limit. On certain occasions, Anthropic continued to report that Plaintiff Patel's session was full even after he purchased additional usage and even though more than ten hours had passed since the limit was reached.

62. Because of the reduced and degraded service, Plaintiff Patel was required to stop working, wait for his limits to reset, and purchase additional usage after exhausting the usage included with his Pro subscription. Beginning in May 2026, Plaintiff Patel paid $5.00 in additional usage charges on May 11 and May 28, 2026. Even after purchasing additional usage, Plaintiff Patel sometimes remained unable to continue working because Anthropic continued to report that his session was full.

63. Anthropic retained Plaintiff Patel's subscription fees and additional usage payments for the affected billing periods. Plaintiff Patel did not receive the full practical value of the paid plan and overpaid by at least the difference between the value represented and the diminished value delivered.

64. Had Anthropic adequately and timely disclosed that Plaintiff Patel's usage could be depleted materially faster than expected, that the quality of the service could be degraded, and that Plaintiff Patel could remain unable to use the service even after purchasing additional usage, Plaintiff Patel would not have subscribed or renewed on the same terms, would have paid less, or would have canceled and selected another service.

**Plaintiff Lauren Morgan**

65. Plaintiff Morgan purchased the subscription directly from Anthropic and paid a fixed price of $20 per month. In deciding to renew, Plaintiff Morgan understood Anthropic's description of the Pro plan to represent that it would provide at least five times the usage per session available through Anthropic's free service and priority access during high-traffic periods. Plaintiff Morgan understood that the paid plan would provide materially greater and more reliable usage during the subscription period.

66. During the Class Period, Plaintiff Morgan used regular Claude for personal purposes. Plaintiff Morgan's subscription was a personal account that she paid for herself and was separate from any enterprise account subsequently provided through her employer.

67. Plaintiff Morgan accessed regular Claude through Anthropic's website and application,

13

CLASS ACTION COMPLAINT

submitted prompts, and relied on the usage included with her paid Pro plan.

68. During Plaintiff Morgan's prior Claude Pro subscription in 2024, her experience was substantially more robust. Plaintiff Morgan was generally able to use the service without unexpectedly exhausting her included usage or being required to pay additional amounts to continue receiving content.

69. After Plaintiff Morgan renewed her subscription on April 10, 2026, she experienced materially faster limit depletion, lost context, repeated work, lower-quality responses, and interruptions to her Claude sessions. Plaintiff Morgan repeatedly reached her usage limits materially sooner than she reasonably expected based on Anthropic's representations and her prior experience with the service.

70. Because of the reduced and degraded service, Plaintiff Morgan was required to stop using Claude and wait several hours for her usage limit to reset. Anthropic did not provide Plaintiff Morgan with a refund or account credit for the periods during which the included usage was depleted or the quality and continuity of the service were diminished.

71. After exhausting the usage included with her Pro subscription, Plaintiff Morgan purchased additional usage credits to continue using the service. Plaintiff Morgan's billing history reflects charges of $20 on July 15, 2026, and $84.55 on July 17, 2026, separate from her recurring $20 monthly subscription charge.

72. Plaintiff Morgan purchased the additional usage because she repeatedly reached the limits of her paid subscription and needed additional credits to continue receiving content. Plaintiff Morgan would not have needed to incur those additional charges had the Pro plan provided the level of usable access and service represented by Anthropic.

73. Anthropic retained Plaintiff Morgan's subscription fees and additional usage payments. Plaintiff Morgan did not receive the full practical value of the paid plan and overpaid by at least the difference between the value represented and the diminished value delivered.

74. Had Anthropic adequately and timely disclosed that Plaintiff Morgan's usage could be depleted materially faster than expected, that Claude could lose context, repeat work, and provide lower-quality responses, and that Plaintiff Morgan could be required to purchase additional usage

14

CLASS ACTION COMPLAINT

to continue using the service, Plaintiff Morgan would not have renewed on the same terms, would have paid less, or would have canceled and selected another service.

## CLASS ACTION ALLEGATIONS

75. **Class Definitions.** Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), Plaintiffs bring this action on behalf of themselves and all other similarly situated persons defined as follows:

> **Nationwide Class:**
> All persons in the United States who purchased a Claude Pro, Max 5x, or Max 20x subscription directly from Anthropic and used that subscription during the Class Period.

> **California Subclass:**
> All persons in California who purchased a Claude Pro, Max 5x, or Max 20x subscription directly from Anthropic and used that subscription during the Class Period.

76. The "Class Period" begins on March 4, 2026, when the backend defects and service degradations alleged herein began affecting Claude subscribers, and ends on May 6, 2026, when Anthropic announced that it had eliminated the peak-hour reduction in subscriber usage limits, or during such other period as may be established through discovery.

77. Plaintiffs expressly reserve the right to modify or refine the definitions of the Class and Subclass, including by adding subclasses as appropriate, and to modify the Class Period based on information obtained through discovery and before filing a motion for class certification.

78. Excluded from the Class and Subclass are Anthropic; any parent, subsidiary, affiliate, or other entity in which Anthropic has a controlling interest; Anthropic's officers, directors, and employees; Anthropic's legal representatives, heirs, successors, and assigns; counsel for the parties in this action and their employees; any judge assigned to this action and members of that judge's immediate family and staff; and any person who timely and validly requests exclusion from the Class.

79. **Numerosity and Ascertainability.** The members of the Nationwide Class and California Subclass are so numerous that joinder of all members would be impracticable. Although the precise number of Class Members is presently within Anthropic's exclusive knowledge, Plaintiffs anticipate

CLASS ACTION COMPLAINT

that the Classes include hundreds of thousands, if not millions, of subscribers. Class membership is ascertainable through Anthropic's subscriber-account, billing, plan, renewal, product-usage, session, usage-allocation, caching, incident, and remediation records, including records identifying accounts subject to the peak-hour reduction and accounts that used Claude Code during the admitted defects.

80. **Typicality.** Plaintiffs' claims are typical of the claims of the Nationwide Class and California Subclass. Like other Class Members, Plaintiffs purchased paid Claude subscriptions directly from Anthropic, used Claude during the Class Period, and were subject to the same standardized terms, plan representations, shared usage-allocation systems, disclosures, and alleged omissions. Plaintiffs experienced diminished access, accelerated usage depletion, degraded Claude performance, or another reduction in subscription value resulting from one or more of the challenged practices. Plaintiffs' claims therefore arise from the same course of conduct and legal theories as the claims of the overlapping groups within the Classes.

81. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiffs' interests coincide with, and are not antagonistic to, the interests of other Class Members. Plaintiffs have retained counsel experienced in complex consumer-protection and class-action litigation, and Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and Subclass.

82. **Common Questions of Law and Fact Predominate.** Questions of law and fact common to the Class and Subclass predominate over any questions affecting only individual Class Members because Anthropic engaged in a standardized course of conduct affecting subscribers through common subscription terms, representations, backend systems, usage policies, and corrective measures. Common questions include:

    a.   Whether Anthropic represented that its paid Claude plans provided materially greater usage, higher limits, priority access, and fewer interruptions than lower-priced or free plans;

    b.   Whether Anthropic altered the manner in which paid usage was measured, allocated, or depleted during the Class Period, including whether the peak-hour reduction

16

CLASS ACTION COMPLAINT

applied to shared account usage through regular Claude, Claude Code, or both;

c.  Whether the admitted caching, context-management, reasoning, prompt, routing, or related defects caused Claude Code users to experience degraded performance, repeated processing, lost context, or accelerated usage depletion;

d.  Whether Anthropic's representations and omissions concerning the different Claude product surfaces, shared usage limits, paid access, and practical capacity were likely to mislead reasonable consumers in light of the services actually delivered;

e.  Whether Anthropic knew of the challenged changes and defects, possessed material information unavailable to subscribers, and adequately disclosed their effects;

f.  Whether Anthropic's conduct breached its contracts with Class Members or violated the implied covenant of good faith and fair dealing;

g.  Whether Anthropic's conduct violated California's Unfair Competition Law, False Advertising Law, or Consumers Legal Remedies Act;

h.  Whether Anthropic was unjustly enriched by retaining subscription fees and additional usage payments attributable to materially diminished or prematurely depleted paid access, and whether Plaintiffs and Class Members are entitled to restitution of those amounts; and

i.  Whether Class Members suffered economic injury, whether the diminished value of the affected subscriptions can be determined on a classwide basis using common evidence, and whether Class Members are entitled to damages, restitution, declaratory relief, injunctive relief, or other remedies.

83. **Superiority.** A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The claims of individual Class Members are relatively modest compared with the expense and burden of prosecuting separate actions against Anthropic. Without class treatment, many Class Members would have no practical means of obtaining relief. Separate actions would also create a risk of inconsistent rulings concerning the same subscription terms, representations, backend practices, and corrective measures. Class treatment will permit these common issues to be resolved in a single proceeding, conserve judicial resources, avoid duplicative

17

CLASS ACTION COMPLAINT

discovery and litigation, and provide uniform relief to similarly situated subscribers. Plaintiffs are unaware of any difficulties that would render this action unmanageable as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.**
*(On behalf of Plaintiffs and the California Subclass)*

84. Plaintiffs incorporate the preceding allegations as though fully set forth herein.

85. Anthropic is a "person" as defined by California Business and Professions Code § 17201 and has engaged in business acts and practices affecting consumers in California.

86. Anthropic's conduct constitutes unlawful, unfair, and fraudulent business acts and practices within the meaning of the UCL.

87. Anthropic's conduct is unlawful because it violates the FAL and CLRA and gives rise to claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

88. Anthropic's conduct is unfair because it retained subscribers' payments while nonpublic or inadequately disclosed backend changes materially diminished the practical value of paid access to regular Claude, Claude Code, or both. The challenged conduct is also tethered to California's established policies favoring truthful advertising and the accurate disclosure of the material characteristics, benefits, quantities, and limitations of consumer services.

89. Anthropic's conduct is fraudulent because its paid-plan descriptions, partial disclosures, and omissions were likely to mislead reasonable consumers into believing that the shared Pro or Max usage allowance would provide the represented level of practical access across the Claude products they used, subject only to adequately disclosed limitations. Consumers were not adequately informed that their usage could instead deplete more quickly during peak hours or, in the case of Claude Code users, be wasted through degraded performance and disrupted workflows caused by backend policies and defects.

90. Plaintiffs relied on Anthropic's material representations and omissions when they subscribed to, renewed, and continued paying for Claude. Plaintiffs lost money or property because they paid more for their subscriptions than the diminished services were worth and, where applicable, incurred

CLASS ACTION COMPLAINT

additional charges after their usage limits were prematurely exhausted.

91. Plaintiffs and California Subclass Members are entitled to restitution measured by the difference between the amounts they paid and the value of the services Anthropic actually delivered during the affected periods, as well as declaratory and injunctive relief and any other relief authorized by law.

92. Plaintiffs lack an adequate remedy at law to prevent future misleading subscription practices or to obtain public injunctive relief. Plaintiffs seek restitution only to the extent legal damages are unavailable or incomplete, including where contractual or privity-based defenses might otherwise permit Anthropic to retain money obtained through the challenged practices. Plaintiffs do not seek duplicative recovery.

**SECOND CAUSE OF ACTION**

**Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.**
*(On behalf of Plaintiffs and the California Subclass)*

93. Plaintiffs incorporate the preceding allegations as though fully set forth herein.

94. Anthropic disseminated, or caused to be disseminated, advertising and promotional statements concerning Claude Pro and Max, including representations regarding increased usage, higher output limits, priority access, continuity of service, access to Claude Code, and subscribers' practical ability to maintain productive workflows.

95. Those representations, together with Anthropic's omission of material facts known to or exclusively controlled by Anthropic, were untrue or misleading. Anthropic retained the ability to, and did, materially reduce shared session access for users of regular Claude and Claude Code and separately implemented changes that impaired subscribers' use of their included Claude services, without adequate, timely, or complete disclosure.

96. Anthropic knew, or through the exercise of reasonable care should have known, that its advertising was misleading in light of its control over the challenged policies and systems, user reports, internal investigations, and subsequent public admissions and remedial measures.

97. Plaintiffs viewed and relied on the challenged advertising when purchasing or renewing their paid plans and suffered economic injury by paying more for the services than the diminished

19

CLASS ACTION COMPLAINT

services were worth.

98. Plaintiffs seek restitution, public injunctive relief, attorneys' fees where authorized, and all other appropriate relief. Equitable relief is sought only to the extent legal remedies are unavailable or inadequate and is not sought as a duplicative recovery.

## THIRD CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.**
*(On behalf of Plaintiffs and the California Subclass)*

99. Plaintiffs incorporate the preceding allegations as though fully set forth herein.

100.    Plaintiffs and California Subclass Members are "consumers," Anthropic is a "person," the purchase of paid Claude plans constitutes "transactions," and the subscriptions are "services" within the meaning of California Civil Code § 1761.

101.    Anthropic violated California Civil Code § 1770(a), including subsections (5), (7), and (16), by representing that its paid subscriptions possessed characteristics, benefits, quantities, standards, or qualities that they did not possess during the affected periods, and by representing that the services were supplied in accordance with prior representations when they were not.

102.    Anthropic's omissions were actionable because Anthropic possessed exclusive knowledge concerning the Claude product surfaces governed by the shared usage system, the scope and operation of the peak-hour policy, and the Claude Code-specific backend defects. Anthropic also controlled information concerning the operation and effects of those policies and defects and made partial representations regarding usage, limits, priority access, product availability, and remediation that were misleading without disclosure of the omitted facts.

103.    The challenged representations and omissions were material and likely to deceive reasonable consumers.

104.    Plaintiffs relied on Anthropic's representations and omissions and suffered actual economic harm by paying for subscriptions whose value was diminished and, where applicable, by paying for additional access.

105.    Plaintiffs presently seek injunctive relief under the CLRA and will amend this Complaint to seek damages after satisfying the requirements of California Civil Code § 1782.

20

CLASS ACTION COMPLAINT

106.	Plaintiffs have filed the venue declaration required by California Civil Code § 1780(d).

## FOURTH CAUSE OF ACTION

### Breach of Contract
*(On behalf of Plaintiffs and the Nationwide Class and California Subclass)*

107.	Plaintiffs incorporate the preceding allegations as though fully set forth herein.

108.	Plaintiffs and Class Members who purchased subscriptions directly from Anthropic entered into valid and enforceable subscription agreements with Anthropic. Those agreements include Anthropic's Consumer Terms and the subscription features, services, and benefits described during the purchase process, including the selected paid tier's represented usage, output limits, priority access, access to regular Claude and Claude Code, and other paid-plan benefits.

109.	Plaintiffs and Class Members performed their obligations under the agreements by paying the required recurring subscription fees and complying with all material subscription terms.

110.	Anthropic breached the agreements by materially failing to provide the paid access and services it promised during the affected periods. Among other things, Anthropic subjected subscribers who used regular Claude, Claude Code, or both to inadequately disclosed reductions in session capacity and allowed Claude Code-specific defects to impair core functionality and consume subscribers' shared included usage, while retaining the full subscription fees without providing a proportional refund or credit.

111.	As a direct and proximate result of Anthropic's breach, Plaintiffs and Class Members suffered damages, including overpayment, diminished subscription value, and any additional amounts paid to replace access that was prematurely exhausted.

## FIFTH CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing
*(On behalf of Plaintiffs and the Nationwide Class and California Subclass)*

112.	Plaintiffs incorporate the preceding allegations as though fully set forth herein.

113.	Every subscription agreement imposed an implied duty on Anthropic not to exercise its contractual discretion in a manner that unfairly deprived subscribers of the benefits of the

CLASS ACTION COMPLAINT

agreement.

114.    The principal benefit of the paid subscription was usable access to Claude's paid services at the represented tier, including regular Claude and, for subscribers who elected to use it, Claude Code. Anthropic retained exclusive control and discretion over shared capacity allocation, session-limit depletion, model defaults, caching, context management, system prompts, routing among product surfaces, disclosures, and remedial measures.

115.    Anthropic breached the implied covenant by exercising and administering that discretion in a manner that materially reduced subscribers' paid access and, for Claude Code users, wasted included usage and disrupted core workflows. Anthropic further failed to provide subscribers with adequate information to identify the affected product surface, detect and measure the resulting loss, or obtain proportional compensation.

116.    This claim does not impose obligations inconsistent with the express terms of the agreements. Rather, it enforces the agreements' existing purpose and prevents Anthropic from exercising broad contractual discretion in a manner that renders the promised benefits of the paid tiers illusory or substantially worthless during a portion of the subscription term.

117.    As a direct and proximate result of Anthropic's breach, Plaintiffs and Class Members suffered damages, including overpayment, diminished subscription value, and any additional charges incurred because their included access was prematurely exhausted.

CLASS ACTION COMPLAINT

## SIXTH CAUSE OF ACTION

### Quasi-Contract and Restitution Based on Unjust Enrichment
*(On behalf of Plaintiffs and the Nationwide Class and California Subclass)*

118. Plaintiffs incorporate the preceding allegations as though fully set forth herein.

119. Plaintiffs plead this claim in the alternative under Federal Rule of Civil Procedure 8(d). To the extent the Court determines that no valid and enforceable contract governs the challenged conduct, that Anthropic's subscription agreements did not require it to provide the paid access alleged herein, or that Plaintiffs and Class Members otherwise lack an adequate remedy at law for Anthropic's retention of the benefits conferred upon it, Plaintiffs seek restitution under principles of quasi-contract and unjust enrichment.

120. Plaintiffs and Class Members conferred direct monetary benefits upon Anthropic by paying subscription fees for Claude Pro, Max 5x, and Max 20x and, in some instances, additional charges for usage after their included access was prematurely depleted.

121. Anthropic knowingly accepted and retained those payments. Anthropic understood that subscribers paid higher prices in exchange for increased usage, higher limits, priority access, fewer interruptions, and usable access to regular Claude and Claude Code during the applicable subscription periods.

122. During the Class Period, Anthropic retained the full amount of subscribers' payments even though the peak-hour capacity reduction and backend defects alleged herein materially diminished the paid services delivered to Plaintiffs and Class Members. Among other things, the challenged conduct caused subscribers to exhaust session limits more quickly, prematurely depleted included usage, interrupted active workflows, caused Claude Code to forget or repeat prior work, and otherwise reduced the practical value of paid access.

123. Anthropic possessed exclusive knowledge of, and control over, the systems and records necessary to identify affected accounts, determine how much included usage was lost or inefficiently consumed, and measure the extent of the resulting service degradation. Plaintiffs and Class Members had no meaningful ability to independently identify, verify, or quantify those losses.

124. It would be inequitable and unjust for Anthropic to retain the entirety of the

CLASS ACTION COMPLAINT

subscription fees and additional usage payments attributable to periods during which Plaintiffs and Class Members received materially diminished or prematurely depleted paid access.

125. Anthropic was therefore unjustly enriched at the expense of Plaintiffs and Class Members in an amount to be determined at trial, including the portion of subscription payments attributable to the diminished services and any additional usage charges incurred because included access was prematurely depleted.

126. Plaintiffs and Class Members lack an adequate remedy at law to the extent that no enforceable contractual promise governs the challenged conduct or their legal claims do not permit recovery of all subscription fees and additional usage payments unjustly retained by Anthropic. Under those circumstances, restitution is necessary to prevent Anthropic from retaining benefits without providing the corresponding value.

127. Plaintiffs and Class Members are entitled to restitution and disgorgement of the amounts Anthropic unjustly retained, together with pre- and post-judgment interest and any other equitable relief the Court deems appropriate.

## PRAYER FOR RELIEF

128. WHEREFORE, Plaintiffs, individually and on behalf of the Nationwide Class and California Subclass, respectfully request that the Court:

a. certify the Nationwide Class and California Subclass, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel;

b. declare that Anthropic's challenged acts and practices are unlawful;

c. award actual, compensatory, nominal, and any other damages available at law;

d. award restitution of the portion of subscription fees and additional usage payments unjustly retained by Anthropic, to the extent permitted by law;

e. enter appropriate public and classwide injunctive relief requiring clear disclosure of material changes to usage allocation, meaningful account-level usage information, and fair remediation for material degradation of paid services;

f. award pre- and post-judgment interest;

g. award reasonable attorneys' fees and costs where authorized by law; and

24

CLASS ACTION COMPLAINT

h.  grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

129.    Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated:  July 28, 2026                    /s/ *William J. Edelman*
                                         William J. Edelman (SBN 285177)
                                         **MILBERG, PLLC**
                                         280 S. Beverly Drive-Penthouse
                                         Beverly Hills, CA 90212
                                         Tel: (771) 474-1121
                                         wedelman@milberg.com

                                         Michael A. Acciavatti (*pro hac vice forthcoming*)
                                         **MILBERG, PLLC**
                                         405 East 50th Street
                                         New York, NY 10022
                                         Tel: (212) 594-5300
                                         macciavatti@milberg.com

                                         *Attorneys for Plaintiffs and Proposed Class*

CLASS ACTION COMPLAINT